IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KEVIN L BALLARD, )
                         ) CASE NO  8:23CV178
           PLAINTIFF )
                         ) CIVIL COMPLAINT
V, )
                         )
TAGGERT BOYD )
SHANE THURMAN )
DR DANIAL DANAHER )
                         )
           DEFENDANTS )

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
2023 MAY -9 AM 11:00
OFFICE OF THE CLERK

COMES NOW the Plaintiff, and for this cause of action against the named Defendants hereby allegas and averes the following:

GENERAL ALLEGATIONS

1. The Plaintiff, Kevin l Ballard, hereinafter "Ballard," is an imate housed within a facility under the custody and care of Nebraska Department of Correctional Services, hereinafter "NDCS," His current mailing address is P.O. BOX 22800 Lincoln Nebraska 68542.

2. Defendant Taggert Boyd, hereinafter "Boyd," was at all times revelent here to the Warden of the Diagnostic and Evaluation Center, hereinafter "DEC," and the Lincoln Correctional Center, hereinafter "LCC," His current mailing address is P.O. BOX 22800 lincoln Nebraska 68542. Being sued in individual capacity.

3. Defendant Shane Thurman, hereinafter "Thurman," is a counselor at DEC. His current mailing address is P.O. BOX 22800 lincoln Nebraska 68542. Being sued in individual capacity.

4. Defendant Dr Danial Danaher, hereinafter "Danaher," is a medicle practictioner, employed by NDCS and precticing at LCC. His current mailing address is P.O. BOX 22800 Lincoln Nebraska 68542. Being sued in individual capacity.

(1)

5. Jurisdiction is proper with this court pursuant to 42 U.S.C. § 1983, because the individual defendants are employees of a state agency and are therefor agents of the State of Nebraska. Venue is proper with this court, because the acts alleged herein occurred in the State of Nebraska.

6. On or about the 6th day of June, 2019, at 9:05 a.m., Ballard was attacked in the recreation yard at DEC by another inmate and proceeded to defend himself. Unit staff called for back-up to break up the altercation. When security staff arrived, chemical agents were deployed, and Ballard broke off from the altercation and surrendered himself to staff. Before staff were able to place Ballard in restraints, Defendant Thurman grabbed Ballard forcefully. Thurman is approximately 6'8" and 300 pounds whereas Ballard is 5'9" and 175 pounds. Thurman LOST HIS MIND and slammed him to the ground. Ballard attempted to brace himself with his hand, and when he hit the ground, his neck was jarred and he felt a painful cracking sensation in his hand. Ballard cried out that his hand was broken. Thurman became enraged, losing control of himself. He proceeded to take hold of Ballard's head and slam it forcefully into the ground. Other staff restrained Thurman and removed him from the area. Ballard was placed in restraints and removed from the recreation yard.

7. Ballard was taken to DEC's Specialized Nursing Facility, hereinafter "SNF," Ballard spoke with the attending nurse and advised that he believed that he sustained a broken hand, and that he sustained a head injury as a result of having his head slammed into the ground by Thurman. Ballard requested to be seen by Doctor Haustead, who had been treating Ballard for unrelated medical conditions. The SNF nurse advised that there were no doctors on sight to treat him. No x-rays were taken, and no scans were done to determine the extent of Ballards injuries. Ballard was placed in a holding cell for several hours without treatment. Ultimately, DEC staff restrained Ballard and escorted him to LCC to be

(2)

placed in disciplinary segregation.

8. Following his transfer to LCC, Ballard continually requested medical treatment from LCC staff. Ballard was told that he must wait, because medical staff were not available to see him. On or about the 9th day of June, 2019, Ballard was finally taken to LCC medical department to be seen by Defendant Danaher. Danaher did not order an x-ray of Ballard's hand. Danaher did not order a scan of Ballard's head. Nothing was done to determine the true extent of Ballard's injuries. Danaher provided Ballard with an ice pack and ordered him to be returned to his cell.

9. Ballard was held in segregation for approximately twenty-one days. During that time, Ballard experienced bouts of severe nausea and verdigo, resulting in vomiting and excrusiating headaches. He was unable to walk, and was forced to utilize a wheel chair or walker to get around. Ballard advised LCC staff of these symptoms, but he received no medical attention.

10. On or about the 27th day of June, 2019, Doctor Houstead discovered Ballard's condition. Houstead immediately ordered that Ballard be taken to the emergency department at Bryan West Hospital. Ballard was seen by a medical practicioner at Bryan West Hospital, and a scan was taken of Ballard's head only. Ballard was diagnosed with severe verdigo resulting from head trauma caused by having his head slammed against the ground. Ballard was instructed to remain bedridden to ease the symptoms. Ballard was returned to LCC. Upon arrival at LCC, Doctor Houstead ordered that Ballard be transferred to DEC SNF for monitoring. Doctor Houstead then ordered an x-ray be taken of Ballard's hand. Upon review of the x-ray, it was determined that Ballard had sustained a fracture of his fifth metacarpal, and that the fracture had not properly healed. No action was taken to correct the problem. Despite Doctor Houstead's additional attention, Ballard's condition did not improve. Ballard continued to experience severe

(3)

bouts of dizzieness and nausea. He remained confined to a wheelchair or forced to utilized a walker to get around. Ballard also begain to ezperience extreme paine in his hand resulting from the improperly healed fracture. As simple as a broken hand might seem if it was your dominent hand things could get quite tricky. Ballard has had to train himself how to use his right hand and simple things like tieing a shoe very difficult, wipping ones behind was probably the hardest task. But having to write has been the most discouring. Plaintiffs left hand needs fixed it looks horable.

11. To date NDCS staff have done nothing to cure or treat the verdigo that Ballard experiences on a daily basis. He continues to experience dizziness and naûsia. To date NDCS staff have done nothing or taken any action to repair the damage to Ballards hand. He continues . . to experience constant paine, and his range of motion is severly hendered.

12. Additionally, NDSS staff have confinscated Ballard's wheelchair and forced him to use a walker, wich serves only to exasperate his condition Ballard has experienced numerous falls, resulting in further ánjuries. To date, NDCS has done nothing to cure or treat the verdigo that Ballard experiences on a daily basis.

13. NDCS records indicate that Danahar has been the subject of numerious complaints for failing to properly respond to or treat inmate injuries. He has been demonstrating delliibrate indefrence to Ballards and other inmates medicle needs by routienly refusing to order tests that the American Medicle Association deems nessary for the treatment of patience. Specifically, Danahar was deliberatly indifferent to Ballards needs, (OFFICIALY) when he refused to see Ballard in a timly manner, despite the serious nature of his injuries and the resulting symptoms. He was further dellibretely indifferent to Ballards needs when he failed to order approprate testing upon seeing Ballard.

(4)

## FIRST CAUSE OF ACTION
### DELIBRATE INDIFFERENCE

14. NDCS records indicate that at the time of Ballards injuries and treatment DEC held a inmate population in excess of design capacity by no more then one-hundred and twenty persent (120)%, LCC held a inmate population in excess design by no less then ninty persent (90)%. DEC and LCC medicle department was understaffed by no less then fourity persent (40)%. And DEC and LCC's medicle Department was under-staffed by no less then sixty persent (60)%. Taggert Boyd was at all times the warden of both these prisons so he new first hand what his staff and medicle department was facing but failed to read the warning signs. Even though he was under alot of pressure by the ACLU and various other intities he just would not remedy the problem he was Delibrate Indifferent to not only the whole prison population including Ballard but he was also indifferent to his own staff. The eigth amenment also protects the incarserated from this kind of treatment.

15. Boyds actions in failing to protect Ballard from Thurman likewise violate the Eigth Amendment, because boyd new that both his prisons were busting out of the seems. And just the fact that Boyd was so short staffed that a loutinent and a case manajor had to be called to a physical altercation just shows how understaffed and overcrowded both his prisons were. Although Boyd was under alot of pressure he could have remedied the problem by just keeping the prison population down and making sure both his prisons had had there own security teams. Boyd new of all these problems but chose to look the other way.

### SECOND CAUSE OF ACTION
#### EXCESSIVE FORCE

16. The Eigth Amenment prohibits the unessary and wanton infiction of paine.

17. Thurmans actions were not nessary to his duties in breaking up the fight between Ballard and the other inmate, because other staff had already gained controle of the altercation threw the the use of chemicle agents. Ballard had already seased his defensive stance tward the other inmate and was in the process of surrendering himself to staff. And out of nowere Thurman came and tackled Ballard from behind and took him to the ground. After that Thurman while Ballard was defensless and on all

(5)

fours Thurman took Ballards head and smashed it into the concrete. It served no purpose but to inflict paine and cause harm.

### THIRD CAUSE OF ACTION
### INADEQUATE MEDICLE CARE

18. The Eigth Amenment protects Ballard from Delibrate indifference to objectively serious medicle needs.

19. Ballard experienced an objectively serious medicle need as a result of Thurmans actions, wich Defendant Danahar was delibretly indifferent to. Ballard was slambed to the ground by a gigantic staff member. His head was then slambed into the ground forcefully. Ballard complained to Danahar that his hand was broken, and it was reported to Danahar that Ballard had been vomiting when attempting to stand. These symptoms and the set of facts surrounding cause are so obvious that even a layperson could easily recognize the need to attend to the injuries by conducting the de minus of testing to discover the extent of the injuries. Danahar did not order any scans or x-rays to determin if Ballard experienced any fractures to either his hand or his head. He did not order scans of Ballards head to determin if Ballard experienced an unseen braine injury. Danahar disregarded all the warning signs, to wit, vomiting, dizzieness, and headache, wich indicate tramatic braine injury. Danahar disregarded these known risks to Ballards health. Danahar was not just negligent in his treatment of Ballard he knowingly brought on a substantial risk to Ballards health by allowing the braine injury to go on treated and allowing fractured hand to heal on its own without proper splinting.

20. Danahars actions or inactions resulted in Ballard continuing to experience verdigo, dizziness, frequent falls, and being confined to using a wheelchair or a walker for mobility. Similary, Danahars actions or inactions resulted in Ballard loosing the full range of motion to his dominent hand.

(6)

And also his inability to stand/and/or walk. Ballards injuries will result in future paine and suffering in the form of further medicle intervention, such as re-breaking the hand in order to reset it, as well as in loss of income due to the range of motion in his hand and his inability to properly balance himself.

## PRAYER

Ballard prays for a judgment of monetary damages in excess of two million dollars from each of the named Defendants for paine and suffering, future medicle costs, and loss of future income as a result of the injuries sustained and to come due to Thurmans excessive force, Boyds failier to protect, and Danahars delibrate indifference to his medicle needs; or in the amount wich the court deems just and proper under the law, together there with the cost of his litigation, any attorney fees or expenses, and any other costs determined at the trial of the matter.

RESPECTFULLY SUBMITTED

*Kevin Ballard*

KEVIN L BALLARD 80479
Plaintiff pro se
P.O. BOX 22800
Lincoln Ne 68542

(7)

CERTIFICATE OF SERVICE

COMES NOW, The Plaintiff in the above entitled and forgiving cause of action and hereby certifies that a true and correct copy of his foregoing petition for Administrative Agency Review was served upon.

Michael Hilgers the attorney general of the state of Nebraska, by placing said copies in the United States mail, first class, postage prepaid, addresses addressed to:

    Michael Hilgers
    Nebraska Attorney General
    P.O. BOX 90920
    Lincoln Nebraska 68509-8920

on this __19th__ day of __April__, 20__23__.

Respectfully Subbmitted

*Kevin Ballard*

P.O. BOX 22800

Lincoln Nebraska 68542

Inmate Name **KEVIN L BALLARD**
(First) (Last)
Inmate # **80479**
P.O. Box 22800
Lincoln, NE 68542-2800

Notice: This correspondence was mailed from an Institution operated by the Nebraska Department of Corrections. Its contents are uncensored.

  

NEOPOST
05/08/2023
US POSTAGE $000.81⁰

ZIP 68522
041M10274603

UNITED STATES DISTRICT COURT
C/O THE CLERK
111 S 18th Plaza suite 1152
OMAHA NEBRASKA 68102-1322

**RECEIVED**
MAY 0 9 2023
CLERK
U.S. DISTRICT COURT