IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEVIN L. BALLARD,<br><br>                    Plaintiff,<br><br>    vs.<br><br>SHANE THURMAN, and DR.<br>DANIEL DANAHER,<br><br>                    Defendants. | **8:23CV178**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on several motions and objections. The Court addresses Defendants' Motion to Extend Deadline to File Dispositive Motions, Filing No. 71; Motion for Summary Judgment, Filing No. 72; and Motion to File Under Seal, Filing No. 73. Also before the Court are Plaintiff's Motion for Production of Documents, Filing No. 58; Motion to Compel Discovery, Filing No. 59; Motion for an Order for Access to the Law Library, Filing No. 65; Objection to Defendants' Motion to Extend, Filing No. 70; Objection to Motion to Seal, Filing No. 78; Objection to Defendants' Brief, Filing No. 79; and Motion for Order to Show Cause, Filing No. 83.

## I. DEFENDANTS' PROCEDURAL MOTIONS

### A.  Defendants' Motion to Extend (Filing No. 71) and Plaintiff's Objection (Filing No. 70)

Defendants sought a one-week extension of time to file a dispositive motion. Filing No. 71 at 1. Plaintiff opposes the extension due to the inherent unfairness he faces as an incarcerated individual against the Nebraska Attorney General's Office. *See* Filing No. 70 at 1, 3. Federal Rule of Civil Procedure 6 provides that "[w]hen an act may or must be done within a

specified time, the court may, for good cause, extend the time . . . with or without motion or notice if the court acts." Fed. R. Civ. P. 6. "The primary measure of good cause is the movant's diligence in attempting to meet deadlines." *Albright as Next Friend of Doe v. Mountain Home Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019) (quotation omitted). "Relevant considerations include the danger of prejudice to the opposing party, the length of the delay, the reason for the delay, and whether the movant acted in good faith." *Spirit Lake Tribe v. Jaeger*, 5 F.4th 849, 854-55 (8th Cir. 2021) (quotation omitted).

Having considered the factors, the Court will grant Defendants' request for an extension of time. Defendants' requested extension falls only seven days after the current deadline and only fourteen days after the Court's original deadline. *See* Filing No. 69; Filing No. 42. There is also no indication that Defendants acted in bad faith. Counsel for Defendants indicated that the delay was due to unexpected medical treatments. Filing No. 71 at 2. While Plaintiff may be prejudiced by Defendants' ability to file a dispositive motion, the Court concludes the Motion should be granted and Plaintiff's objection will be overruled.

## B. Defendants' Motion to Seal (Filing No. 73) and Plaintiff's Objection (Filing No. 78)

Defendants ask the Court to enter an order pursuant to Fed. R. Civ. P. 5.2(d) and NECivR 7.5 sealing what will be marked and offered as Exhibit 15 of the Index of Evidence, Filing No. 74, in support of their Motion for Summary Judgment, Filing No. 72. Defendants assert the the exhibit contains confidential and sensitive information. Filing No. 73 at 1. Defendants state that sealing is necessary as it cannot be made available to Plaintiff, an incarcerated person within the custody and control of the Nebraska Department of Correctional Services (NDCS), to protect the good order and the

2

safety and security at the prison. Filing No. 73 at 1. Plaintiff objects because the footage has already been made public. Filing No. 78 at 1. Defendants have cited legitimate safety concerns and, because Plaintiff has already seen footage of the incident "several times," Filing No. 78 at 1, he will not be prejudiced. Accordingly, the Court will grant the Motion, overrule the Objection, and seal Exhibit 15.[1]

## II. PLAINTIFF'S MOTIONS

### A. Motion for Request for Production of Documents (Filing No. 58)

Plaintiff filed a motion labeled "Motion for an Order for Plaintiff's First Request for Production of Documents." Filing No. 58 at 1. The filing appears to be Plaintiff's requests for production of documents. *See* Filing No. 58 at 1 ("pursuant to rule 34 of the Federal Rules of Civil Procedure, Plaintiff requests that Defendants Daniel Danaher and Shane Thurman produce for copying the following documents."). Plaintiff is not requesting any relief from the Court, which is the hallmark of a motion. *See* Fed. R. Civ. P. 7(b). This is an unauthorized filing which will be ordered stricken from the Court file. *See* NECivR 5.4(a) ("Disclosures under Federal Rule of Civil Procedure 26(a)(1) and (2), depositions, interrogatories, answers and objections to interrogatories, requests for admissions, answers and objections to requests for admissions, requests to produce or inspect, and responses to requests to produce or inspect must not be filed until needed for trial, resolution of a motion, or on the court's order."). The Court notes that discovery documents filed with the Court are not deemed to be served in accordance with the applicable Federal Rules of Civil Procedure.

---

[1] Although the Motion to Seal is granted, the Court has not had to reference the video in granting Defendants' Motion for Summary Judgment.

**B.  Motion to Compel Discovery (Filing No. 59) and Motion for Order to Show Cause (Filing No. 83)**

Plaintiff seeks an order compelling discovery pursuant to Fed. R. Civ. P. 37(a).  Filing No. 59 at 1.  Specifically, he requests that the Court order Defendants to "answer fully interrogatories numbers 1 through 25 for both Defendants."  *Id*.  Plaintiff's Motion must be denied because Plaintiff has not made the required showing that he "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  "To curtail undue delay in the administration of justice, this court only considers a discovery motion in which the moving party, in the written motion, shows that after personal consultation with opposing parties and sincere attempts to resolve differences, the parties cannot reach an accord."  NECivR 7.1(j).[2]  This rule does not contain an exception for pro se prisoners.  *Stanko v. Sanchez*, No. 8:06CV510, 2007 WL 2746859, at *2 & n. 3 (D. Neb. Sept. 18, 2007).

Defendants' response indicates that, on April 30, 2025, Defendants responded to Plaintiff's requests for admissions and provided their position on Plaintiff's other discovery, including Plaintiff's interrogatories.  *See* Filing No. 66-1 at 1-2.  Since that time, counsel for Defendants has not received any communication from Plaintiff seeking a resolution to the dispute over Plaintiff's interrogatories to Defendants.  *Id*. at 2.  Further, on June 10, 2025, the Court warned Plaintiff that any motion to compel discovery—including any motion related to Plaintiff's interrogatories—must be accompanied by a

---

[2] "This showing must also state the date, time, and place of the communications and the names of all participating persons. 'Personal consultation' means person-to-person conversation, either in person or on the telephone. An exchange of letters, faxes, voice mail messages, or e-mails is also personal consultation for purposes of this rule upon a showing that person-to-person conversation was attempted by the moving party and thwarted by the nonmoving party." NECivR 7.1(j).

showing that Plaintiff attempted to confer with Defendants to obtain the contested discovery without Court action. Filing No. 57 at 4. Plaintiff has not made any such showing and the Motion to Compel must be denied.

Plaintiff's proposed "Order to Show Cause for a Preliminary Injunction," Filing No. 83, must be denied for the same reason. Plaintiff's proposed order would require Defendants to show cause why they should not be subject to a preliminary injunction under Fed. R. Civ. P. 65(a) that requires them to produce Plaintiff's requested discovery. Although Plaintiff invokes Federal Rule of Civil Procedure 65, his proposed order seeks to compel Defendants to answer Plaintiff's interrogatories, requests for production of documents, and requests for admission. *See* Filing No. 83 at 1. Thus, the Motion will be construed as a motion to compel, and it must be denied for the reasons stated above.

## C. Motion for Access to the Law Library and Proper Access to the Courts (Filing No. 65)

Plaintiff seeks an order compelling the Reception and Treatment Center (RTC) to permit Plaintiff access to the law library for at least two hours, three times per week. Filing No. 65 at 1. Plaintiff also seeks an order requiring that "the Law" (presumably the RTC law library) bring "a typewriter to this gallery." *Id.* Plaintiff explains that he has been placed in an isolated prison gallery and does not know how long he will be there. *Id.* at 2. Plaintiff's request must be denied. The RTC is not a party to this action and Plaintiff's request is wholly unrelated to the issues before the Court. Thus, the Court cannot compel RTC to take any action in this matter. *See Carroll v. McAllister*, No. 8:20-CV-265, 2021 WL 5014575, at *4 (D. Neb. Oct. 28, 2021), *aff'd,* No. 21-3706, 2022 WL 3571422 (8th Cir. Aug. 19, 2022). Further, even if RTC was a party, "prisoners have a constitutional right of access to the courts but this

5

right does not guarantee the ability to discover grievances, and to litigate effectively once in court." *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (cleaned up) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). Accordingly, Plaintiff's request is denied.

## D. Motion for Objection to Defendants' Brief in Support of Summary Judgment (Filing No. 79)

Plaintiff filed a "Motion for Objection" to Defendants' Brief in Support of Motion for Summary Judgment, Filing No. 79. A review of the Motion demonstrates that it is Plaintiff's brief in opposition to Defendants' Motion for Summary Judgment. Local Civil Rule 7.1 provides in part: "The party opposing a motion must not file an 'answer,' 'opposition,' 'objection,' or 'response,' or any similarly titled responsive filing. Rather, the party must file a brief that concisely states the reasons for opposing the motion and cites to supporting authority." NECivR 7.1(b)(1)(A). Accordingly, the Court will treat Plaintiff's "Motion for Objection" as a brief in opposition, and the Clerk of Court will be directed to term the Motion for Objection, Filing No. 79, as a pending motion.

## III. MOTION FOR SUMMARY JUDGMENT

## A. Summary Judgment Procedure

### 1. Facts Considered on Summary Judgment

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

6

purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This Court's local rules further specify that a summary judgment motion shall be supported by a brief and a separate statement of material facts, which "consist of <u>short</u> numbered paragraphs. Each numbered paragraph shall contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a)(2) (underlining in original). "The statement must not contain legal conclusions." NECivR 56.1(a)(3).

The opposing party's brief must include "concise responses to the moving party's statement of material facts." NECivR 56.1(b)(1)(A). "The statement should consist of separate numbered paragraphs corresponding to the numbered paragraphs in the movant's separate statement of facts, and must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies." *Id*. A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of material facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion" for summary judgment. NECivR 56.1(a) (underlining omitted). On the other hand, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1)(B) (underlining omitted).

7

Although Plaintiff is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g).

In accordance with the Court's local rules, Defendants filed Filing No. 75, "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). Plaintiff did not directly respond to any of Defendants' numbered statements of fact. Accordingly, those facts are considered admitted, so long as they are supported by the record. *See* NECivR 56.1(b)(1)(B).

## 2. Factual Background

### *Plaintiff's 2022 Case*

On March 7, 2022, Plaintiff filed a complaint under 42 U.S.C. § 1983 against, among others, Defendants Thurman and Danaher. *See* Filing No. 74-2 (the "2022 Complaint"); *see also Ballard v. Boyd, et al.*, Case No. 8:22cv90 (D. Neb. 2022) (the "2022 Case"). In the 2022 Complaint, Plaintiff alleged that Thurman—a corrections employee—violated Plaintiff's Eighth Amendment right to be free from excessive force. Filing No. 74-2 at 7. Plaintiff claimed that, on June 6, 2019, while Plaintiff was in the process of surrendering himself after an altercation with another inmate, Thurman "forcefully tackled [Plaintiff] to the ground." *Id.* at 2, 7. Plaintiff alleged that after this altercation, Danaher—a physician assistant for NDCS—was deliberately indifferent to Plaintiff's serious medical need by failing to adequately treat Plaintiff's broken hand and head injury allegedly resulting from the altercation. *Id.* at 8.

On April 4, 2022, the Court conducted an initial review of Plaintiff's Complaint under 28 U.S.C. 1915(e)(2) and 1915A. Filing No. 74-3. The Court

8

dismissed several named Defendants, but permitted the suit to proceed to service of process on the Eighth Amendment claim against Thurman for use of excessive force and on the Eighth Amendment claim against Danaher for alleged deliberate indifference to Plaintiff's serious medical needs. *Id.* at 8. Following the Court's initial review, Defendants Thurman and Danaher filed a motion for summary judgment, claiming Plaintiff failed to exhaust his administrative remedies, and Defendants had qualified immunity. Filing No. 74-4 at 1. The Court concluded that Plaintiff failed to exhaust his administrative remedies on his excessive force claim. The Court stated:

> The undisputed evidence establishes that Ballard never filed an Informal Grievance form, Step-One Grievance Form, or Step-Two Grievance Form alleging use of excessive force by Thurman on June 6, 2019. Consequently, Ballard's excessive force claim against Thurman must be dismissed without prejudice.

*Id.* at 9 (internal citations omitted).

The Court also concluded that Plaintiff failed to exhaust his administrative remedies on his deliberate indifference claim. The Court stated:

> Ballard has not exhausted his administrative remedies for his claim against Danaher for the alleged inadequate medical care related to his hand injury. In summary, 42 U.S.C. § 1997e(a) precludes Ballard from suing Danaher for alleged inadequate medical care stemming from his alleged June 6, 2019 injuries, and his § 1983 claim must be dismissed without prejudice.

*Id.* at 10-11. The Court thus dismissed the 2022 Case without prejudice because Plaintiff failed to exhaust his available administrative remedies on his claims of excessive force and inadequate medical care. *Id.* at 11. The Court did not reach the issue of whether Defendants were entitled to qualified immunity. *Id.* at 11.

### *The Present Case*

In this case, Plaintiff filed another complaint under 42 U.S.C. § 1983 against, among others, Defendants Thurman and Danaher. *See* Filing No. 29. Plaintiff again claims that, on June 6, 2019, following an altercation with another inmate, Thurman "out of nowhere came and tackled Ballard forcefully from behind with a football tackle that was totally uncalled for and a shock to everyone who witnessed it." Filing No. 29 at 1. Plaintiff alleges that after the altercation, Danaher was deliberately indifferent to Plaintiff's serious medical need by "refus[ing] to see him in a timely manner, despite the serious nature of [his] injuries and the resulting symptoms. [Danaher] was further deliberately indifferent to Ballard's needs when he failed to order appropriate testing upon seeing Ballard." *Id*. at 3.

### *Exhaustion of Remedies at NDCS*

The NDCS adopted and promulgated 68 Neb. Admin. Code, ch. 2 and created Administrative Regulation/Policy ("AR") 217.02 to establish administrative remedies for inmates, including a grievance process. Filing No. 74-5 at 2-3; *see also* Filing Nos. 74-6, 74-7, and 74-8. Under Neb. Rev. Stat. § 83-4,138, information about NDCS's grievance procedures, including AR 217.02 and 68 Neb. Admin. Code, ch. 2, is made available to all inmates within the Inmate Resource Centers—law libraries—at each facility. Filing No. 74-5 at 2. At intake into the NDCS system, or during transfer between institutions within the NDCS system, inmates receive an orientation that includes information about the grievance process. *Id*. at 3; *see also* Filing No. 74-9. New inmates receive a copy and verbal explanation of the grievance process during orientation. *Id*.

10

## B. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986); *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).

"There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (internal quotations and citations omitted). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial responsibility of informing the court of the basis for the motion and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material

11

fact.[3]  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted.  *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

## C.  Discussion

### 1.  Exhaustion of Administrative Remedies

The Eighth Circuit has held that where, as here, an affirmative defense has been raised that a prisoner plaintiff failed to exhaust his administrative remedies before filing a § 1983 action, *see* 42 U.S.C. § 1997e(a), this issue must be resolved before a district court may proceed to address the merits of the case.  *See Benjamin v. Ward Cty.*, 632 F. App'x 301 (8th Cir. 2016) (per curiam) ("[W]e conclude that the district court erred by proceeding to the merits of [the prisoner plaintiff's] claims without first determining whether he had exhausted administrative remedies that were available . . . .") (collecting cases); *Pinder v. McDowell*, 714 F. App'x 612, 613 (8th Cir. 2018) (per curiam) (vacating judgment in favor of defendant and remanding to district court for determination of a pleaded defense of nonexhaustion); *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc) ("Exhaustion should be decided, if feasible,

---

[3] This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial."  *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018).

before reaching the merits of a prisoner's claim."). As with Plaintiff's previous case, Plaintiff has not shown that he exhausted his administrative remedies as to the claims asserted against Defendants in this action. Accordingly, this action must be dismissed without prejudice.

### a. The PLRA's Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act ("PLRA"), inmates cannot bring an action regarding prison conditions under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). The PLRA requires "proper exhaustion," meaning an inmate must comply with prison grievance policy deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006). To properly exhaust, the grievance must raise the specific issue addressed in the federal claim. *See Muhammad v. Mayfield*, 933 F.3d 993, 1002-03 (8th Cir. 2019).

An inmate satisfies § 1997e(a) by pursuing "the prison grievance process to its final stage" to "an adverse decision on the merits." *Porter v Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (quoting *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014)). It does not matter that the inmate "subjectively believed that there was no point in his pursuing administrative remedies." *Id.* (quoting *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir.2002) (en banc)). Significantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007)). The only limit to § 1997e(a)'s mandate is that an inmate need exhaust only such

13

administrative remedies as are "available." *Ross v. Blake*, 578 U.S. 632, 648 (2016).

Where a prisoner fails to exhaust administrative remedies prior to bringing an action, dismissal without prejudice is mandatory. *Porter v Sturm*, 781 F.3d 448 (8th Cir. 2015). "[F]ailure to exhaust is an affirmative defense" and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910 (2007). Unless a failure to exhaust is clear on the face of the complaint, the defense must be raised in a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and defendants must produce evidence proving failure to exhaust. *Albino*, 747 F.3d at 1166. A defendant is entitled to summary judgment if "undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust." *Id.*

### b. Applicable Prison Regulations

Pursuant to its authority under Neb. Rev. Stat. §§ 83-4,111 and 83-4,135 through 83-4,139, NDCS must "adopt and promulgate rules and regulations to establish criteria for justifiably and reasonably determining which rights and privileges an inmate forfeits upon commitment and which rights and privileges an inmate retains," including grievance procedures. *See* § 83-4,111(2). NDCS adopted and promulgated 68 Neb. Admin. Code, ch. 2 to carry out its obligations regarding inmate grievance procedures. Additionally, NDCS created AR 217.02, an internal policy document to guide inmates and NDCS staff in how the grievance process is implemented. Filing No. 74-5 at 4;[4] Filing No. 74-6.[5]

---

[4] Filing No. 74-5 is the Declaration of Nadine Forgey, NDCS's Grievance Administrator.
[5] Filing No. 74-6 is a copy of the NDCS AR 217.02, effective January 31, 2019.

NDCS maintains a three-step grievance process. Filing No. 74-5 at 5; *see also* Filing No. 74-6. All grievance forms are available in the housing units at all NDCS facilities, including restrictive housing and medical units. *Id.* All NDCS inmates receive orientations and verbal explanation of the NDCS grievance process, AR 217.02 and 68 Neb. Admin. Code, ch 2. Filing No. 74-5 at 4-5. Copies of AR 217.02 and 68 Neb. Admin. Code, ch 2 are available in the Inmate Resource Centers at every NDCS facility. Filing No. 74-5 at 4.

The first step in the grievance process is for an inmate to attempt informal resolution of his/her grievance with designated NDCS unit staff by submitting an Informal Grievance Resolution form. Filing No. 74-5 at 5; *see also* Filing No. 74-6. Informal Grievance Resolution forms must be filed within three calendar days of the incident being grieved. Filing No. 74-5 at 5. Upon receipt of an Informal Grievance Resolution form, NDCS unit staff conduct an investigation and issue a written response to the inmate. *Id.* at 5-6; Filing No. 74-6.

If an inmate is not satisfied with unit staff's response to their Informal Grievance Resolution, he or she may proceed with the second step of the NDCS grievance process by filing a Step-One Grievance Form with the facility warden or designee. Filing No. 74-5 at 6. The Step-One Grievance must be submitted on a Step-One Grievance form. *Id.* The Step-One Grievance form must be filed within 15 calendar days of receipt of the informal grievance response or if no response was received, within 20 calendar days of the incident giving rise to the grievance. *Id.* The Informal Grievance Resolution Form and response, if received, must be attached to the Step-One Grievance Form. *Id.* at 7.

If an inmate disagrees with the warden or designee's response to a Step-One Grievance, he or she may proceed with the third and final step of the NDCS grievance process and file a Step-Two Grievance with the Director of

NDCS or designee. *Id.* Step-Two Grievances must be submitted on the Step-Two Grievance Form and filed within 10 calendar days of receipt of the warden or designee's response to the Step-One Grievance. *Id.* Additionally, the Informal Grievance Form and Step-One Grievance Form and responses, if any, must be attached to the Step-Two Grievance Form. *Id.*

Inmates incarcerated in an NDCS facility do not exhaust their administrative remedies until the inmate timely files and receives an adverse decision to his or her Step-Two Grievance form. *Novascone v. Danaher*, No. 8:19CV201, 2022 WL 3159754, at *8 (D. Neb. Aug. 8, 2022); *Davlin v. Miller*, 2012 WL 3991374, at *3 (D. Neb. Sept. 11, 2012); *Keup v. Hopkins*, 2008 WL 427556, at *4 (D. Neb. Feb. 14, 2008); *Williams v. NSP Med. Servs. Unit*, 2007 WL 1362890, at *1 (D. Neb. Apr. 20, 2007).

### c. Nonexhaustion of Plaintiff's Claim Against Thurman

Plaintiff has not shown that he exhausted his excessive force claim against Thurman. As stated above, exhaustion is required under the PLRA for excessive force claims. *See Nussle*, 534 U.S. at 532. Thus, "[u]nder the PLRA, an inmate must exhaust available administrative procedures before filing suit even if he is complaining of an isolated incident of excessive force and is requesting a remedy (e.g. damages or employee termination) which cannot be obtained through the prison grievance process." *Ajamu v. Douglas Cnty. Corr. Ctr.*, No. 8:05CV277, 2007 WL 3112451, at *3 (D. Neb. Oct. 22, 2007) (citing *Foulk v. Charrier*, 262 F.3d 687, 695 (8th Cir. 2001)).

The undisputed evidence shows that Plaintiff never filed an Informal Grievance form, Step-One Grievance Form, or Step-Two Grievance Form alleging use of excessive force by Thurman on June 6, 2019. Filing No. 75 at 10; *see also* Filing No. 74-5 at 9; Filing No. 74-10 (Ballard's Grievance Log);

16

Filing No. 74-4 at 9. Accordingly, Plaintiff's excessive force claim against Thurman must again be dismissed without prejudice. *See Langford v. Norris*, 614 F.3d 445, 457 (8th Cir. 2010) (dismissals for failure to exhaust under § 1997e(a) must be without prejudice); *Jirak v. Terris*, 668 F. App'x 680, 681 (8th Cir. 2016) (same).

### d. Nonexhaustion of Plaintiff's Claim Against Danaher

Plaintiff likewise failed to exhaust his claims against Danaher because he failed to follow NDCS grievance procedures, and his grievances were untimely. As with excessive force claims, exhaustion is required under the PLRA for claims for inadequate medical care. *See, e.g., Novascone*, 2022 WL 3159754, at *8; *Davlin*, 2012 WL 3991374, at *3; *Williams*, 2007 WL 1362890, at *1. To adequately exhaust his administrative remedies, Plaintiff was required to follow NDCS procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits.").

The undisputed evidence shows that Plaintiff failed to properly follow the steps in the NDCS grievance procedure for his claims against Danaher. Plaintiff's injuries occurred on June 6, 2019, but he did not file any Informal Grievance Resolution forms—or grievance forms of any kind—between June 6, 2019, and July 1, 2019. Filing No. 74-5 at 9; Filing No. 74-10. On July 1 or July 5, 2019, Plaintiff filed his first Informal Grievance Resolution form (GR 2019-5713) for inadequate medical care related to an alleged head injury sustained on June 6, 2019. Filing No. 74-11 at 2; Filing No. 74-10 at 2; Filing No. 74-11 at 2. Plaintiff's GR 2019-5713 made no mention of any failure to treat Plaintiff's alleged hand injury. *See id*. NDCS responded to Plaintiff's

17

Informal Grievance Resolution form, GR 2019-5713, on July 15, 2019.  *See*
Filing No. 74-11 at 2; Filing No. 74-10 at 2; Filing No. 74-5 at 9; Filing No. 74-
4 at 10.

Despite the response, Plaintiff did not timely file a Step-One Grievance,
or a grievance form of any kind.  Instead, on October 28, 2019, Plaintiff
attempted to file a Step-Two Grievance related to the "head trauma" Plaintiff
suffered on June 6, 2019.  Filing No. 74-11 at 1; Filing No. 74-10 at 2; Filing
No. 74-5 at 9; Filing No. 74-4 at 10.  As described above, the NDCS requires an
inmate to file a Step-One Grievance within 15 calendar days of the response to
an Informal Grievance Resolution form.  Accordingly, the Step Two Grievance
was dismissed for failure to follow the grievance policy, including failure to file
a Step-One Grievance Form.  Filing No. 74-12; Filing No. 74-5 at 9.  Plaintiff
does not dispute that his Step-Two Grievance failed to follow the NDCS
procedure and was far out of time.

Plaintiff filed another Informal Grievance Form on October 28 or 30,
2019, alleging—for the first time—inadequate medical care for his hand injury
suffered on June 6, 2019.  Filing No. 74-13 at 6 (GR Series 2019-9706); Filing
No. 74-10 at 1; Filing No. 74-5 at 9.  NDCS officials responded on October 30,
2019, advising Plaintiff to continue treatment with his hand, and informing
him that an informal grievance must be filed within three days of the alleged
incident.  *Id*.  Between March 6 and 10, 2020, Plaintiff attempted to file both a
Step-One Grievance form and a Step-Two Grievance form, again related to his
alleged hand injury.  *See* Filing No. 74-13 at 4-5; Filing No. 74-10 at 1
(Grievance Log); Filing No. 74-5 at 9.  Both forms were returned because they
were not filed within 15 days of the NDCS's response on October 30, 2019.  *Id*.
Plaintiff does not dispute that these grievances related to his alleged hand
injury were out of time and failed to follow NDCS procedure.

18

In summary, 42 U.S.C. § 1997e(a) again precludes Plaintiff from suing Danaher for alleged inadequate medical care stemming from his alleged injuries incurred on June 6, 2019. Accordingly, his § 1983 claim must be dismissed without prejudice.

### e. Excusing Exhaustion Requirements

Plaintiff appears to argue that he should be excused from compliance with the NDCS administrative procedures. Plaintiff first claims that his head injuries caused him to be confused about the grievance process. Filing No. 79 at 3. Plaintiff also claims that he was in the NDCS Diagnostic and Evaluation Center for just over four days before he was placed in a segregation unit, and therefore he did not receive training on the NDCS grievance process. *Id*. Accordingly, Plaintiff asserts that "tolling for the first 18 months must come into play" because "Plaintiff's mind nor his body was in a normal place." *Id*.

Under the PLRA, exhaustion is "mandatory." *Woodford*, 548 U.S. at 85. The PLRA does not contain exceptions to the requirement that prisoners exhaust administrative remedies before bringing suit. *Ross v. Blake*, 578 U.S. 632, 638-39 (2016). A prisoner who has failed to exhaust may only bring suit where the administrative exhaustion procedures are not "available" for purposes of the PLRA. *Id*. at 639. Exhaustion procedures are not available: (1) when the procedure would be a "dead end" because officers are unable or unwilling to provide relief; (2) when the procedure is so opaque as to become "incapable of use"; and (3) when prison officials prevent a prisoner from utilizing the procedure through "machination, misrepresentation, or intimidation." *Id*. at 642-43. Even construed liberally, Plaintiff has not argued that administrative procedures were unavailable for any of these reasons, nor does the record support any such argument. Plaintiff admits that he has

19

written over eighty-five different grievances. Filing No. 79 at 4. Though none of his grievances solved his complaints to his satisfaction, he can hardly argue the procedures were "unavailable" to him. Because the administrative remedies were available to Plaintiff, but he failed to exhaust them, the PLRA bars his claims.

## IV.  CONCLUSION

This action will be dismissed without prejudice for Plaintiff's failure to exhaust his available administrative remedies regarding the claims of excessive force and inadequate medical care. The Court does not reach the issue of whether Defendants are entitled to qualified immunity or whether Plaintiff's claims are barred by the doctrine of claim preclusion. Defendants seek dismissal with prejudice. However, the Eighth Circuit has consistently instructed that dismissal for failure to exhaust must be without prejudice, even where exhaustion appears futile. *See Porter v. Sturm*, 781 F.3d 448, 449, 452 (8th Cir. 2015) ("Dismissal without prejudice is mandatory" where prisoner chose not to pursue final stage of grievance process and was clearly out of time to do so); *see also Springer v. Caple*, 717 Fed. Appx. 650, 651 (8th Cir. 2018) (modifying dismissal for non-exhaustion to be without prejudice); *Jirak v. Terris*, 668 Fed. Appx. 680, 681 (8th Cir. 2016) (same); *Davis v. Harmon*, 389 Fed. Appx. 587, 588 (8th Cir. 2010) (same); *Washington v. Uner*, 273 Fed. Appx. 575, 577 (8th Cir. 2008) (same). Accordingly, although any future suit would almost certainly be futile, Plaintiff's claims are dismissed without prejudice.

IT IS THEREFORE ORDERED,

1.    Defendants' Motion to Extend Deadline to File Dispositive Motions, Filing No. 71, and Motion to File Under Seal, Filing No. 73, are granted.

2.    Plaintiff's Motion for Production of Documents, Filing No. 58, shall be stricken from the Court file.

3.    The Clerk of the Court is directed to term Plaintiff's Motion for Objection to Defendants' Brief, Filing No. 79. The Court has treated Plaintiff's Motion for Objection as his brief in opposition to Defendants' summary judgment motion.

4.    Plaintiff's Motion to Compel Discovery, Filing No. 59; Motion for an Order for Access to the Law Library, Filing No. 65; Objection to Defendants' Motion to Extend, Filing No. 70; Objection to Motion to Seal, Filing No. 78; and Motion for Order to Show Cause, Filing No. 83, are denied.

5.    Defendants' Motion for Summary Judgment, Filing No. 72, is granted, and Plaintiff's Complaint is dismissed without prejudice.

6.    Judgment shall be entered by separate document.


Dated this 20th day of November, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

21